Good morning, Your Honors. May it please the Court, my name is Stacey Tolchin, and I represent with my co-counsel, Megan Brewer, Petitioner Najaryan. I would like to confirm that counsel for the government can hear us. Counsel, can you hear us? I can hear you fine, Your Honor. All right, thank you. Thank you. I would like to reserve four minutes of my time for rebuttal. All right, thank you. There are two issues before this Court. One is whether the Board erred in denying the motion tree open by finding that Petitioner's conviction for assault with a firearm is still a crime of violence under 16a. And the second is the motion tree open based on changed country conditions for purposes of CAT. Unless the Court prefers otherwise, I'll proceed with the aggravated felony argument. As to the first issue, the Board held that law of the case established that Petitioner's conviction was a crime of violence under 16a. However, Petitioner's motion was based on a change in law, the Board's decision in matter of Guzman Polanco from 2016, which applied the Supreme Court's decision in Johnson to interpret the phrase physical force to mean violent physical force. The Board reversed a 2002 decision in matter of Martin regarding an assault conviction, which had held that the assault conviction was a crime of violence under 16a. Based on the Board's decision, Petitioner moved to reopen his removal order. While that was pending, the Court issued U.S. v. Worley, which applied Johnson, and found that the use of force in the Washington riot statute did not meet Johnson's definition of violent physical force, or force capable of causing physical pain or injury to another person. Despite the intervening law, the Board held in Petitioner's case that a conviction for assault with a firearm remains a crime of violence under 16a. Matter of Guzman Polanco later clarified and was amended to hold that circuit law governed the 16a analysis regardless of what the Board says, and that the requirement of the use of violent physical force is determined by the circuit court or the Supreme Court, if it revolves that question. Hence, the Board's position is that there can be no agency change in law on the crime and violence issue unless this Court or the Supreme Court overturns its precedent. Now, the Board relied on the Court's decision in Heron-Salinas, and then obviously there's many other cases finding that 245a is a crime of violence under 16a. But after Johnson, the Court needs to apply the test that's laid out fairly nicely in U.S. v. Dixon. Applying Johnson, Dixon holds that the elements of 16a require that, one, physical force used must be violent force or force capable of causing physical pain or injury to another person, and the use of force must be intentional, not just reckless or negligent. No Court has done that. Now, the Court is aware of the recent case of Vazquez-Gonzalez that was issued last year, which again found that California assault is a crime of violence under 16a. However, Vazquez-Gonzalez does not even mention Johnson or the requirement that the term physical force used in 16a be violent physical force, nor does Vazquez-Gonzalez assess whether 245a requires an intentional use, attempted use, or threatened use of violent physical force. Ginsburg-McCabe. But, counsel, haven't we held post-Johnson that assault with a deadly weapon under this statute is a crime of violence? In Jimenez-Azarte and in Vazquez-Gonzalez, but neither case cites Johnson. Neither does it have to be. Does the case have to cite Johnson? Well, it does, because Johnson changed everything as far as the use of the term force to become violent physical force. And so I also want to note Vazquez-Gonzalez But if the panel were of the view that Johnson didn't change the conclusion, wouldn't we assume that the Court was aware of Johnson and the fact that it was not discussed meant that it didn't change the analysis? Well, as the Court's aware, unstated assumptions are not binding in the Court. I mean we're bound by the ruling of the panel unless it's clearly inconsistent with Supreme Court authority. Correct. Yes. And of course, the issue is whether Johnson's changed this last analysis. But if you go all the way back to Jaron-Solinas and Guerrera, which are those first cases looking at 245a, they say that even minimal force, even a minor use of force for 245a is enough to violate 16a. And that's not the case anymore for purposes of Johnson, right? Johnson requires violent physical force. And I do want to make the Court alert to two things. One is there's, in Vazquez-Gonzalez, this was raised by Rule 28J, there's an error in the case where the Court looks at the Supreme Court's decision in People v. Williams to say that assault requires an intent to commit battery. But there's actually an appellate decision called People v. Asnivole from 2012, where the appellate court from the State says Williams makes clear that assault does not require an intent to commit a battery. And so, you know, this — it's a moving target on the 16a analysis. The Court's probably aware of the recent decision from Stokely from the Supreme Court and then Voisin. It's all moving constantly. But the key in the analysis, and I think this is the way to break this up, is that under California law, there's three mens rea. There's an intentional act, knowledge of the facts, but there's negligence regarding the risk. There's — you don't have to be aware of the risk and then still consciously disregard it. But, counsel, that's not — we've — when we have looked at Penal Code 245a, we've said that it's based on force likely to produce great bodily injury. So you're saying that the California court decisions do not say what we — do not interpret the statute the way we have interpreted the statute? Is that your view? Not at all, Your Honor. That's correct. The issue is that there's actually three mens rea attached to it, and there's been this confusion. It's so confusing regarding which mens rea attaches, because it's an intentional act. Right under Dixon, we have to look at the second element, which is the use of violent physical force. And because of the Court's decisions in Fernandez-Ruiz, that needs to be intentional. And so is there an intentional use of violent physical force? So in your view, where did Herron Salinas go wrong? So Herron Salinas and Grajeda, both are very similar, same year. But Herron — okay, go ahead. Yeah. No. I mean, Herron Salinas essentially says that any minimal force is enough. Right? It doesn't use violent physical force. And that wasn't the standard until Johnson. And, in fact, Judge Schroeder, the decision in Solorio-Ruiz, which — I'm sorry, in Flores-Cardero regarding resisting arrest, acknowledges this change that Solorio-Ruiz acknowledges this decision that Johnson made. We all acknowledge that Johnson made a change, but in Vasquez-Gonzalez, we said that the — that our cases had continuing validity on this point. Right. But in Vasquez-Gonzalez, there is no use of the term violent physical force, and there's no reference to Johnson at all. Are you saying it's wrong? It is. It's also wrong on Esnivole. But the reason I think that it's not controlling is that there's no mention of Johnson. Had it said, we believe Johnson didn't change the case law, it would be different. But it doesn't say that. It just doesn't reference Johnson. It doesn't reference Dixon in the bifurcated analysis for mens rea. What about the Guzar-Rodriguez case that says the grajita court's reason applies even after Johnson? I'm sorry. Which case, Your Honor? Guzar-Rodriguez, 900 F. 3rd, 1044, 1049, note 5. That's a case from last year. And it says even after Johnson, the grajita's court's reasoning applies. Right. But again, it has to go through this two-part test for purposes of Dixon on intent. I mean, the California courts are very clear. So is it your argument that unless the case goes through the analysis that you think it has to go through, it's not binding precedent? I think unless the court specifically addresses the argument, which is, again, the Johnson two-part test under Dixon, Dixon lays this out, and Dixon's been followed. We did a 28-J, I think, five or six times now since briefing. This is the new analysis the courts are doing. But, yes, it has to go through this two-part analysis. Otherwise, the past decisions are not binding. Now, what case says that unless the analysis goes through the two-step format that you are urging, it's not binding precedent, or we can't rely on it? Is there a case that makes that distinction? I think if the Court looks at the recent Dixon cases that were submitted by Rule 28J, there's Garcia-Lopez, Walton, and Studhorse. They go through these analyses. I agree. They may go through the analyses, but does that mean that the cases that did not go through the analysis are no longer binding precedent? Yes. I mean, if you look at the – I think it's the Sakamoto decision. It's the general proposition that in a case that assumes a point without a discussion is not binding. And the Court has reiterated that in the Duran-Gonzalez case throughout. It's the general principle. This is an argument that hasn't been addressed yet in the 245a context. Would the Court like me to go on to the second argument on the motion to reopen? Sotomayor, are you arguing that no conviction of assault with a firearm under California's statute is a crime of violence? That's correct, yes, Your Honor. So as to the second part of the argument on the second motion to reopen, this was based on changed country conditions. And I want to be clear, this is a CAT motion to reopen. And just so the Court is aware, we raised this under sua sponte authority because the motion to reopen regulations were never amended after CAT. So right now the board regulations say if you show changed country conditions for purposes of asylum and withholding of deportation, then you can reopen. It doesn't reference CAT. After the decision came down, the case of Agonifer came down from the Ninth Circuit and said the authority is actually one of the other, is to use that asylum regulation even though it doesn't reference CAT. We think that regulation is too narrow, but it's not even clear this is now a sua sponte motion to reopen. But more importantly we don't have any authority to review that, do we? Of course you do, Your Honor. If you do for legal claims, that's the Bonilla decision. And you only are precluded from review under the Heckler v. Cheney exception when a decision is committed to agency discretion by law. This is CAT, this is the Convention Against Torture. There is no discretion in this decision. And I think the board seems to acknowledge this. Well, but the problem, I mean, I think we're skipping past the point of the motion to reopen. And if you're asking the board to sua sponte reopen, rather than getting to the merits of the CAT claim, we have to look at procedurally where we are with that. And do we have the authority to tell the board to sua sponte reopen, regardless of what the issue is that's going to be considered once it's reopened? But at that threshold inquiry, what authority do we have to tell the board to exercise a sua sponte authority to reopen? So if you look at the board's decision, you know, it says Could you answer that question first? What authority, what case authority allows us to compel the board to exercise a sua sponte authority to reopen? There's no case on this, Your Honor. The closest thing is Hernandez-Ortiz, which is the context of withholding of deportation. And what the Court says is that if it's a mandatory form of relief, there is no discretion to deny the case as long as it's new evidence and a prima facie claim is established. Was that case on a motion to reopen? It was, yes, Your Honor. It was a sua sponte motion to reopen or not? I don't know. Was a timely motion to reopen? It was before IHRA-IHRA and before all the limitations, so I'm not actually sure there was a time issue on it. But again, if you also look at Justice Scalia's concurrence in INS versus Doherty, again, it's the same premise that there's no discretion to deny in a mandatory form of relief case as long as there's new evidence presenting a prima facie claim. But more importantly here, we have legal issues that have been raised, right? NEA says that even sua sponte decisions are reviewable for legal error. And I'd like to just reserve my remaining time. I'm almost running out. Thank you. Counsel. Catch your breath. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the government. There are two motions to reopen in this consolidated appeal. I plan to address today the motion alleging a change in law based on Johnson, but I'm, of course, happy to address any of this panel's questions with regard to the other motions seeking categorical referral. Now, as to change of law, there are two separate and fully dispositive reasons why Petitioner's argument fails. First, this Court has already affirmed Petitioner's removability as an aggravated felon in its previous denial of his 2015 petition for review. This was five years after Johnson was decided, and that decision, this Court, was law of the case. Now, second, regardless of law of the case and regardless of this Court's prior decision, there is no question that Johnson does nothing to disturb this Court's long line of cases holding that California assault with a firearm is categorically a crime of violence. And I'll get to the merits in a second, Your Honor. We think it's very clear that Johnson doesn't change anything. I do want to clarify, going back to the law of the case argument here, I want to clarify something that perhaps wasn't clear from the briefing with regard to the timing of Johnson and the agency's decisions here. Now, as I just mentioned, Johnson was already around at the time that this Court denied Petitioner's previous petition for review, and that's why that decision is law of the case. But more even than that, Johnson was decided before Petitioner was even placed in removal proceedings in 2010. And that means two things. Petitioner could have raised, but did not, the Johnson case before the immigration judge, before the Board of Immigration Appeals, and before this Court when it was challenging the agency's decision. At none of those times did Petitioner raise this argument, despite it apparently being fundamental to their claim, and only waited years later to invoke the Board's extraordinary sua sponte authority in this motion. And then the second point is that Johnson can't be a fundamental change in the law when it wasn't even a change in the law at all. It was already around before Petitioner was even placed in removal proceedings. So this is all by way of saying, we already law of the case doctrine here. Of course, the Board has already denied this motion based on law of the case, but there is a host of other significant procedural concerns here, and there are serious concerns of repose and finality implicated by bringing up a case nine years after the fact when you had the opportunity to bring it up during the original proceedings. Now, setting all of that aside, I'm perfectly happy to talk about the merits here, Your Honors. I think Johnson was not raised and has not really been addressed in the literally dozens of cases in which this Court has reaffirmed  is categorically a crime of violence. And there's a reason for that. The Court has already addressed the violent force standard even before Johnson. And that's because, and let me just clarify, I think one simple point about Johnson. Johnson was about level of force, right? Johnson clarified that the actus reus requires violent force. But in setting that standard, it drew directly from the Supreme Court's earlier case in Leocal from 2003. And because of that, because Leocal, which otherwise its central holding was about mens rea and requiring intentional conduct, Leocal talked about the level of force required for crimes of violence and described it as violent, a category of violent active crimes. Because of that language, this Court and many others had already started to incorporate this violent force standard. This Court did it in Grajeda and her own Salinas. And on that point, I want to clarify opposing counsel said a couple times there that they applied this least offensive touching approach and didn't incorporate the violent force standard. That's flat out wrong. What they said was that the least offensive touching with a firearm or a deadly weapon absolutely explicitly meets the violent force standard. And that's why since Grajeda and her own Salinas, this Court has reaffirmed literally dozens of times, including after Johnson, that California assault with a firearm or with a deadly weapon. And again, those are two separate offenses, but the Court treats them the same. This case involves 245A2, which is assault with a firearm, that that crime is categorically a crime of violence. As to Kat, Your Honor, the one point I would make is just again, as this panel seems to recognize we have very limited jurisdiction because we are talking about a sua sponte context. There is not, when you talk about what jurisdiction, there isn't those circumstances. As this Court made clear in both Bonilla and Singh, which both the government and petitioner have raised here, sort of setting the standard for what jurisdiction, if any, there is. It's not sort of the more conventional clawback jurisdiction clause of 242A2D. This is very limited jurisdiction in the sua sponte context. Basically, if the Board declined to even exercise sua sponte jurisdiction or sua sponte authority because of some sort of misunderstanding of the law, that is the only thing that this Court can sort of peek behind the covers to take a look at. That's what both Bonilla and Singh said. In those cases, the Board had actually misunderstood that a petitioner was actually eligible to adjust status based on the motion to reopen. That's Singh and the Board in Bonilla misunderstood that the petitioner could have been eligible for 212C relief after judo-laying. And because of that misunderstanding, did not even apply its authority in the first place. And there's simply nothing analogous to that here. If there are no further questions. All right. Thank you, Counsel. It appears not. Thank you very much, Your Honor. All right. Good bottle. Okay. Thank you. Just a few points. Counsel mentions that if you go back to Grijeda, it does say the least offensive touching would meet the violence standard. But if you look at the recent case, the Supreme Court again is at 16a analysis, essentially, and Stoeckling, which is from January of this year, it talks about the use of physical violent force. And it again reiterates that a minimal force is not enough, that in Stoeckling the issue is violence necessary to overcome the physical resistance of the victim. So minimal touching isn't enough under the Supreme Court's analysis under 16a. So what's your response to opposing counsel's observation that in the context of a firearm, minimal touching is sufficient with a firearm or an otherwise deadly weapon? Right. There are three California cases that I think address this point. People v. Chance, Supreme Court case, says that just pointing a gun alone is enough to meet the assault. And People v. Lathis. Is enough? Is enough, yeah. Not at a person, just pointing the gun. People v. Lathis and People v. Turner both state that just touching the gun alone is enough. A celebratory event, shooting the gun up, and as long as you're aware that a person is there, that's enough. So these aren't threats necessarily. In Lathis, I believe they were shooting a gun at a parked car. And so there was no threat there. But because another person was present, that was enough to meet assault. So again, we have to go to the intent. Assault or assault with a deadly weapon? Assault with a firearm. Assault with a firearm. These are all those cases. So again, we have to look at the intent for purposes of Fernandez, Ruiz, and Leocal. And there's no intent to cause the threat of physical injury. And what did Mr. Najarian actually do with the firearm? Mr. Najarian's facts are not good in this case, clearly, right? But obviously, as you know, we're looking at the record of conviction here. And overall, at the elements of- Do you realize how ridiculous that sounds to anyone who's not a lawyer? Steepton Johnson. I mean, I'm still a little bitter because I was reversed by the circuit last week. Because they said murder is not a crime of violence in Washington State. Oh, I did see that case, actually. That was me. Yeah. And I know, obviously, the- That's another one that you think makes no sense to me. And the dissents in these cases focus on this, right? They focus on, or the concurrence is actually looking at the facts. It's opposed. But obviously, we know the law under Johnson is the record of conviction. Just finally, we do present three legal issues in the motion, the second motion to reopen, right? These are legal issues. So under Bonilla, these are reviewable, regardless of the sui sponte authority. All right. Counsel, thank you. Great. Thank you, Your Honor. We understand your argument. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court. The next case, Martin v. Medtronic, has been removed from the calendar. The following case, Malum Medical v. Theos Medical, was submitted on the briefs. Our final case on calendar for argument this morning is Wangeness v. Wells Fargo.
judges: Schroeder, Rawlinson, Lasnik